841 F.2d 1125
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jesse B. DAVIS and Richard Lorence Harris, Plaintiffs-Appellants,
v.
TEAMSTERS LOCAL 299; Trenton Resins Credit Union; and
Michael Newmarker, Defendants-Appellees.
 No. 87-1131.
 United States Court of Appeals, Sixth Circuit.
 March 2, 1988.
 
 Before BOYCE F. MARTIN, Jr., NATHANIEL R. JONES, and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Jesse B. Davis and Richard L. Harris appeal the district court's decision to grant summary judgment in favor of the Trenton Resins Credit Union. Davis and Harris alleged that the Credit Union's lending practices were racially discriminatory.
 
 
 2
 As employees of the Monsanto Chemical Company, Davis and Harris were members of the Trenton Resins Credit Union. The Credit Union has promulgated a specific loan policy. Under this policy, in order to be granted a loan, a loan applicant must either be a member of the Credit Union for at least one year or have an approved co-signor. The only exception to this requirement is for share-covered loans. In deciding whether to grant a particular loan application, the Credit Union's Credit Committee also examines other criteria: the applicant's total debt load; the applicant's credit history; and whether specific collateral exists to secure the loan.
 
 
 3
 Harris became employed with Monsanto in August 1981. Within six months of becoming eligible for a loan, Harris had been approved for three loans totaling over $4,700. Only one loan application filed by Harris prior to February 1983 was rejected, and it was denied because he had not yet satisfied the one-year waiting requirement. From March 1983 to December 1984, Harris applied for six loans; two applications were approved and four applications were rejected. The purported reasons for denying those four loan requests included insufficient collateral, excessive monetary obligations, and Harris' violations of previous security agreements. Apparently, Harris had sold a boat which was collateral on several outstanding loans without the Credit Union's approval, and he never bought a walk-in cooler which was to have served as collateral for a loan he received expressly in order to purchase the cooler.
 
 
 4
 Also, Harris once spoke with John Morrison, a Credit Union loan officer, about Harris' need to borrow $370 to pay an overdue utility bill. Harris claims that Morrison told him that he, Morrison, would arrange for the loan, but the Credit Union denies that Morrison made such a promise. When Harris went to the Credit Union the next day, Morrison was on vacation and Harris did not receive the loan. But Harris never filled out a loan application, and he has admitted that he never knew of any member who had received a loan without filling out an application.
 
 
 5
 Davis began working for Monsanto in September 1979. He received a small loan before he had been a Credit Union member for one year because he pledged shares as collateral. Between May 1980 and August 1982, three of his applications for small loans were approved, and two applications for large loans were rejected. The latter two requests were denied because he purportedly had excessive obligations, inadequate collateral, and a poor credit history. In fact, Davis requested the two large loans so that he could consolidate his other outstanding obligations.
 
 
 6
 On August 30, 1985, Harris and Davis individually filed suit against the Credit Union, Monsanto, Teamsters Local 299, and Michael Newmarker, a Monsanto supervisor. In January 1986, their cases were consolidated, and, in September 1986, their claims against the Credit Union were severed from the claims against the other defendants.
 
 
 7
 During the discovery period, Davis and Harris were permitted to select the credit files of seven other members. They chose to examine the files of five white males, one black male, and one white female. Davis and Harris were unable to offer any statistical evidence that the white members were treated more favorably than they or the black member had been treated. Moreover, two other black employees testified that they had suffered no racial discrimination.
 
 
 8
 In challenging the district court's decision to grant the Credit Union's summary judgment motion, Davis and Harris essentially advance two arguments. First, they argue that they set forth sufficient facts to create a genuine issue of fact for trial. Second, they contend that the district court improperly restricted their right to adequate discovery: they claim that, by limiting their investigation of the Credit Union's records to only seven files, they were prevented from making any meaningful statistical comparisons. These arguments are without merit.
 
 
 9
 In order to survive a summary judgment motion, the motion's opponent must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). Here, the Credit Union has offered proof of legitimate, non-discriminatory reasons for all of the decisions which Davis and Harris alleged were racially-motivated. In response, Davis and Harris have failed to refute these reasons by citing any specific intances of disparate treatment or any evidence of disparate impact. Rather, they have merely repeated their conclusory allegations. As the district court properly recognized, Davis and Harris cannot defeat a summary judgment motion merely by resting on their pleadings. Therefore, summary judgment in favor of the Credit Union was proper.
 
 
 10
 The argument about inadequate discovery is similarly unavailing. Davis and Harris asked the district court to compel the Credit Union to produce all loan applications made by Credit Union members since 1978 and all documents relating to those applications. The court, however, only permitted them to examine the files of seven Credit Union members. In light of the fact that Davis and Harris were able to select which seven files they wanted to examine, we believe the court's decision was not an abuse of its discretionary power to manage pre-trial discovery. This limitation on document production prevented the possible harassment of the Credit Union and minimized the chance that confidential financial information would be unnecessarily disclosed.
 
 
 11
 Accordingly, summary judgment for the Trenton Resins Credit Union is hereby affirmed.